E. N. DEITLER, Trustee v. A. A. KINCANNON, et al.

Western Section.   February 4, 1927.

No petition for Certiorari was filed.

1. **Accord and satisfaction.** Evidence held to show that a smaller sum was not accepted in full satisfaction of the account.

In an action by a trustee in bankruptcy for a bankrupt contractor to recover money due from the Board of Education for the repair of a school house where it was contended that the account was settled in full by the payment of a smaller amount held that the evidence did not show that the payment was accepted in full settlement of the account.

2. **Contracts. Public buildings.** Although by statute contracts for the repair of public buildings must be let upon competitive bids yet a contractor who has completed his work may recover the cost of the materials and labor performed, together with a reasonable profit.

In an action by a contractor to recover for work and materials in repairing a public school building where the contrtact had not been let upon competitive bids, held that while the law (Chapter 57, Acts of 1917, Section 4) provides that all contracts for buildings and repairs and for equipment amounting to $100 or more shall be let upon competitive bids yet this does not bar the complainant from recovering that to which he is in equity and good conscience entitled for materials furnished and labor performed; and that complainant should have a fair and reasonable profit for undertaking and carrying on the work.

3. **Work and labor. Evidence.** Evidence held to show contractor's prices exorbitant.

In an action by a contractor to recover for materials furnished and labor performed in repairing a school building where the evidence showed

that the school board had been charged more than double the actual amount the labor cost the contractor **held** that the prices were exorbitant and a court of equity would reduce the claim of the contractor, before allowing it.

Appeal from Chancery Court, Shelby County; Hon. Wightman H. Hughes, Chancellor.

Sustained in part, reversed in part and remanded.

Clyde H. Koen, of Memphis, for appellant.

Yandell Haun, of Memphis, for appellee.

OWEN, J. The defendants have appealed from a decree rendered against them for the sum of $6279.93, and costs of suit, in the chancery court of Shelby county, Tennessee.

E. N. Deitler, the complainant, is the trustee in bankruptcy for Browne & Borum Plumbing Company, a corporation, engaged in the business of heating, wiring and plumbing. The defendants constitute the Board of Education, and the president of the West Tennessee State Normal School at Memphis.

The bill sought to recover of the defendants in their official capacities and also in their individual capacity, an alleged indebtedness due the Browne & Borum Company as a balance on account for labor and materials furnished in improving and repairing the heating, lighting and plumbing at the West Tennessee State Normal School, located in Shelby county. The bill, as amended, asked for a mandatory injunction against defendants, requiring them to draw their certificate or voucher in favor of the complainant on the State Comptroller for the amount found to be justly due him, and by adding the following:

"That, if this court cannot legally pass upon and fix the amount justly due this complainant, said State board of education be required by mandatory final injunction to audit and pass upon complainant's account and issue its certificate on the comptroller for the amount so found to be due complainant."

Later the bill was further amended so as to add after the words "mandatory final injunction" in paragraphs 4 and 5 the words "or mandamus."

The defendants filed demurrers to this bill, which demurrers were overruled, and upon appeal to the Supreme Court, December Term, 1924, the Chancellor's decree was affirmed in an opinion by Mr. Justice Hall, which is reported in 151 Tenn., at page 652.

The cause was remanded to the chancery court of Shelby county for further proceedings, and on the remand the defendants denied owing the account sued on. The bill alleged that said board is justly indebted to Browne & Borum Company in the sum of $5,401.-74 (less a credit of $1874.65) for goods, wares, and merchandise sold and delivered to defendants at their special instance and re-

quest, and for work and labor performed at said West Tennessee State Normal School; that each and every order for material and workmanship was duly authorized by those in charge of said institution, all of which was known to each member of the State board of education, or should have been known to them; that all of said orders were duly authorized by A. A. Kincannon, the president of said institution; that it was the duty of said Kincannon, and other members of the State board of education, to keep the buildings of said West Tennessee State Normal School in proper repair and in sanitary condition; that all the repairs done by Browne & Borum Company were necessary, and the charges made therefor were fair and reasonable; that $1874.65 was paid on said account; that the said A. A. Kincannon, and other members of the State board of education have never denied owing, or the justness, of said account, but the only excuse which they have offered for not paying the same is that they did not have the funds in the treasury with which to pay said indebtedness.

The prayer of the bill was for a decree in favor of complainants, and a mandatory injunction ordering the proper voucher to issue, etc., and for general relief.

The defendants answered and denied that any contract had been made between the Browne & Borum Company and the defendants as alleged in complainant's bill. The defendants insisted that when the complainant Brown & Borum Company received $1874.65 August 2, 1920, that this was in full settlement of all complainant's demand and in full payment for the work done and materials furnished by complainant at the West Tennessee State Normal. The defendants further contended that the items on the account which were for more than $100 were not collectible because of the provisions of section 4, chapter 51, Acts of 1917, making it necessary for all such bills for repairs to be let upon competitive bidding, or that at any rate, since it was an effort to reap the fruits of a contract forbidden by law, the complainants should be required to make the strictest proof of its claim of correctness before there could be a recovery on the quantum meruit.

The complainant took the deposition of Harris L. Browne, formerly president of the Browne & Borum Company, W. N. Conwell, formerly secretary of said company, M. H. Loring, a plumber who did some of the plumbing work, and known as a master workman, and W. L. Townsley, who was the helper to the electrician Garrett, who did work for the defendant. Complainant also took the deposition of Lew Tisdale, a plumber who made an examination of the work complainant alleged was done at the West Tennessee Normal, and testified that the charges were reasonable. The defendant took the depositions of A. A. Kincannon, formerly president of West

Tennessee Normal School, F. L. Teuton and J. E. Jordan, formerly connected with said school, and were connected with it at the time the repairs were made, and C. B: Ijams of Jackson, Tennessee, a member of the State board of education, who served on a committee appointed by the State board to endeavor to adjust these accounts.

Upon final hearing the Chancellor sustained the complainant's bill and allowed a full recovery for all of the items sued upon, holding that the labor had been performed and the materials furnished, which were sued for, and that the same were reasonable charges, and allowed complainants to recover interest from January 1, 1920.

The Chancellor held that the complainants were entitled to recover $4175.74, balance due, and that the interest from January 1, 1920 to the date of the decree amounted to $1778.19, and the defendant, the State board of education, was commanded and enjoined to forthwith issue its certificate or warrant on the Comptroller or Treasurer for said judgment, payable to the order of complainant as trustee; and the defendant was likewise commanded and enjoined to issue a certificate in the same manner upon the Comptroller for the costs of the cause.

It appears that the decree was entered August 7, 1926, and the defendants were given until the 10th day of September, 1926, in which to make a return upon the writ of mandamus.

To this decree the defendants excepted, prayed and were granted an appeal to this court, and have assigned errors, as follows:

1. The Chancellor erred in finding and decreeing that complainant had made out his case on the account sued for, and was entitled to recover the amount of the decree, or any other amount.

Under this assignment it is insisted (1) the evidence does not establish that the account is correct; (2) there is no evidence to sustain the decree; (3) not a single leaf, or a single entry or record was introduced, or was available for examination; (4) the absence of these entries and records were not explained; (5) not a witness who made the original entries, or any of them, or who kept the original items was called to verify a single item appearing on any invoice attached to the bill, and, furthermore, no witness was called to explain why the records were not available.

It is further insisted under this assignment that items of repair jobs for more than $100 could not be contracted for under the provisions of section 4, chapter 51, Acts of 1917, except on competitive bids; and that if this work was done and the materials furnished in violation of this statute, the Chancellor should have required the complainant to make his proof according to the strictest rules of evi-

dence before a recovery should have been allowed on the quantum meruit.

It is further insisted that the payment of $1874.65 on August 2, 1920, was tendered and accepted at the time as payment in full.

The second assignment of error complains of the action of the Chancellor allowing interest from January 1, 1920.

It appears that Browne & Borum, before they became bankrupts, filed a bill against these same defendants on May 19, 1921. After this bill pended for sometime it was dismissed. Later, Browne & Borum Company became bankrupt and the present bill was filed May 27, 1924. It is very earnestly insisted that complainant had not shown due diligence in the prosecution of its claim, and therefore if the complainant is entitled to recover, interest should have been allowed only from the date of the filing of the bill May 27, 1924.

We are of opinion that the payment of $1874.65 August 2, 1920, was not a full and final settlement. On November 3, 1920 Dr. Kincannon, who was superintendent of the West Tennessee Normal, handed Mr. Browne of the Browne & Borum Company a check for $152.40 for work, stating at the time that Browne should be glad to get this amount as it was the best that the superintendent could do to get this sum for the Plumbing Company.

It appears from an exhibit found in the transcript, page 19, that the account of Browne & Borum Company began August 28, 1919, and the first item charged on that date was $115, and stated by contract. It appears that there is no serious dispute over this contract amounting to $115. The next item was November 3, 1919, amounting to $64.65. Between November 3, 1919 and December 31, 1919, the defendant was charged with eleven different accounts or items for materials and labor. During November there are three charges,—$64.65; $172.50, and $87.75, making a total of $324.90. In December there are eight charges, as follows: $1874.65; $43.30; December 18, $510.65; December 27, $72.40; December 31, $122.-20; December 31, $24.75; December 31, $25.80; December 31, $2869.44, making a total of $5033.54.

In February, 1920 defendants were charged with bills; the first, February 5th, of $112.60; second, February 10th, $493.40; Total $606. On June 21st, defendants were charged with two items, or accounts, $71.50 and $68.20, or a total of $139.70. On June 10, 1920, defendants were credited, "merchandise returned, $200;" August 4, 1926, check $1874.65; November 3, 1920, check, $152.40. The total charges amount to $6728.79, with credits amount to $2227.05, leaving a balance claimed, of $4501.74.

It appears that after the dispute arose as to whether complainant had been paid in full, Dr. Kincannon refused to pay anything after the payment of $152.40 on the 3d of November.

Mr. Browne in January, 1921 appeared before the State board of education in Nashville, and a committee consisting of three of the members of this board was appointed to meet with complainant Browne & Borum Company and see if the claim could be adjusted. This committee consisted of C. B. Ijams, of Jackson, F. R. Ogilvie, of Brownsville, and ———— Fowlkes, of Waverly, Tennessee.

Mr. Ijams testified. It appeared that Mr. Ogilvie was dead and Mr. Fowlkes was no longer connected with the West Tennessee State Board of Education. The witness Harris L. Browne testified and it was alleged in complainant's bill, that settlement was reached between the Browne & Borum Company, at this conference, and the committee of the State board of education, whereby the State board of education would pay Browne & Borum the sum of $3527.-70. The bill alleged that the State board had repudiated the agreement of the State committee who was authorized to make this settlement. Ijams testified that he had received the information from other plumbers and the catalogue prices as to the material furnished, and that he told Browne at this conference that he (Browne) was charging exorbitant prices—war prices—and that Browne admitted that he was charging war prices for this work; that Ijams said to Browne "do you know what you have expended for material and labor?" and Browne replied that he did. Ijams then said "we will pay you the cost of labor and material, plus ten per cent." Browne refused to accept this proposition; that then Ogilvie made a proposition to pay $3500. Ijams testified that after he returned to Jackson and found, upon further investigation, that Browne's charges were so exorbitant that he was of the opinion that the $1874 paid in August, and the $152 paid in November, which was for repairs the board had ordered for the laundry, that the Browne & Borum Company had received all that was due them.

We are of opinion that the $1874 paid in August was not a full settlement of complainant's account. It appears that during the fall of 1919, Dr. Kincannon, at the time he was head of the West Tennessee Normal, received an electrical shock and was confined to his room for several months. He was unable to give supervision to this repair work, and several employees of the West Tennessee Normal began to give orders for certain repairs, the bursar, Mr. Gardner, Mr. Jordan, and Mr. Teuton, who was connected with the agricultural department. Like the adage "to many cooks spoil the broth," we find that the West Tennessee Normal had too many heads or employees who asserted authority and gave orders to have repairs done. On the other hand, we are of opinion that these charges are not just and reasonable, and they are exorbitant.

The proof shows that between October 3, 1919, and December 31st of the same year, the defendant was charged with 1279½ hours

for labor done by master workmen, at $1.75 per hour, and for 988 hours for helpers at $1. per hour.

Mr. Townsley testified that he was a helper; that he received forty or fifty cents an hour, he had forgotten which it was, when he worked at the West Tennessee Normal; that he worked there under Garrett, the electrician, Garrett being dead at the time Townsley testified; that Townsley was engaged in this work for something like three months; that Garrett was working there when he (Townsley) began work, and that Garrett worked some after Townsley quit. The account shows that defendants were charged for this work of installing electrical material with the sum of $2869.-44; that the work covered a period from October 7, 1919 to January 3, 1920; however, a bill was made out for this December 31, 1919. Defendant was charged for Garrett's services 647 hours at $1.75 per hour; Townsley 603 hours, or $603. Townsley testified that if he received forty cents an hour that Garrett received eighty cents an hour, and that if Townsley was receiving fifty cents an hour when this work was done, Garrett would receive $1 per hour; or, in other words, the helper received one-half of what the master workmen received per hour—that Townsley's pay was one-half of Garrett's

There is no testimony that there was any extra hours put in on this work, or any over time. Between October 7th and January 3d there would be, by calculation, eighty-seven days; allowing for Sundays and holidays, there would be 71 days for work, and this number of days at eight hours per day would be 568 hours. And Townsley on this one job appears to have put in 603 hours, while he admits that he did not work as long as Garrett; that he began after Garrett had been working for some days and quit this job before Garrett completed it. Garrett put in 647 hours, or nearly 100 extra hours, during this period when it is stated that no extra time was done, or overtime charged. The bookkeeper who had charge of the books at the time this work is alleged to have been done was not introduced.

Mr. Browne testified in a general way that he knew that this material was furnished and that these workmen were given credit by Browne & Borum for the hours they claim. It appears that a workman would go to the office of Browne & Borum in the City of Memphis, in the morning, make a report of how many hours he put in the day before, and of the material he needed for that day. He did not report to Browne & Borum at night, but went to his home, and after leaving his home in the morning he would go by the place of business of Browne & Borum and in this way a record was kept of the hours and the material. There is nothing to show what was returned that makes up the item of $200, for which the defendant was given credit. The proof is very unsatisfactory. It

is shown that defendants were charged for labor $3327.12,—$2339.12 being for master workmen at $1.75 per hour and $988 for helpers at $1 an hour. According to Townsley's testimony, Browne & Borum was charging from 75 to 100 per cent, or more, profit for the labor. If Townsley received fifty cents an hour, his maximum, and defendants were charging $1 per hour, that would be one hundred per cent. If he only received forty cents an hour and $1 an hour, was charged that would be one hundred and fifty per cent. If the master workmen received $1 per hour, the maximum named by Townsley, and it is undisputed, the profit would be seventy-five per cent. If he received eighty cents per hour—Townsley is not certain whether it was eighty cents or $1—then the profits would be over 100 per cent.

Mr. Ijams testified that the charges for the material were exorbitant; that he had compared these prices with other work that the State board had had done, and with his information as to the cost of material, that Browne was charging twice the price charged for like material, as shown by list prices.

Mr. Browne testified that he made his price list as it was because this was a public institution, yet he did not deny that he was charging enormous profits.

We are of opinion that the Chancellor was in error in allowing the complainant to recover the full amount sued for. While the law (Chap. 51, Acts of 1917, Sec. 4) provides that all contracts for buildings and repairs and for equipment amounting to $100, or more, shall be let upon competitive bids, we are of opinion that this does not bar the complainant from recovering that to which he is in equity and good conscience entitled, for material furnished and labor performed; and that complainant should have a fair and reasonable profit for undertaking and carrying on the work. It would have been better if this work could have been done after competitive bidding, but we are of opinion that when these repairs were undertaken that Dr. Kincannon and his assistants never dreamed, or had the remotest idea that this bill would amount to one-third of what was charged. We realize that often it costs more to do repair work than the work new would cost.

We are of opinion that complainant's bill of $6728.79, less the first item of $115, which was by contract, leaving $6613.79, is exorbitant to the extent of forty per cent. We are of opinion that this account should be reduced forty per cent, or a reduction of $2655.48, leaving the account, $3958.31, to be credited with $2227.-05, merchandise returned and two checks, which would leave due complainant $1731.26, plus the $115 by a contract, or $1846.26 and to this extent the defendant's assignments of error will be sustained and the decree of the Chancellor will be so modified, and a de-

cree will be entered here for $1846.26, with interest from November 3, 1920, the date of the last payment of $152.40, which interest, by simple calculation amounts to $————, the date of the entry of this decree.

So far as the assignments of error are inconsistent with this decree, they are overruled; otherwise they are sustained, and a decree will be drawn in conformity with this opinion, and a mandatory injunction will be ordered, directing payment to be made as directed by the Chancellor for the sum we find to be due and owing.

The cost of the lower court will be paid as decreed by the Chancellor; the cost of the appeal will be paid, two-thirds by the complainant and one-third by the defendants, and the defendants are directed to issue their certificate or warrant on the Comptroller for the payment of the cost accrued in the lower court, and for one-third of the cost of the appeal. Execution will issue against the complainant as trustee for two-thirds of the cost of the appeal.

Heiskell and Senter, JJ., concur.